UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JAMES PEASE,

    Plaintiff,

  v.                                      Case No. 20-CV-103

WHITEWATER UNIFIED SCHOOL DISTRICT and
MARK ELWORTHY,

    Defendants.

**DECISION AND ORDER ON PLAINTIFF'S MOTION FOR RECONSIDERATION**

James Pease sued his former employer, the Whitewater Unified School District (the "District") and the District's former District Administrator, Mark Elworthy, for retaliation under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 ("Title IX"). Pease also brought several claims under Wisconsin law, including breach of contract, wrongful discharge in violation of public policy, and defamation. Defendants moved for summary judgment in their favor as to all of Pease's claims. In a decision issued March 7, 2022, I granted defendants' motion for summary judgment as to Pease's IX retaliation claim and declined to exercise supplemental jurisdiction over Pease's remaining state law claims. (Docket # 90.) Judgment was entered on March 8, 2022. (Docket # 91.) Presently before me is Pease's timely motion for reconsideration pursuant to Fed. R. Civ. P. 59(e). (Docket # 95.) For the reasons I explain below, Pease's motion is denied.

**LEGAL STANDARD**

Rule 59(e) allows a party to move the court for reconsideration of a judgment within 28 days following the entry of the judgment. A motion for reconsideration serves a very

limited purpose in federal civil litigation; it should be used only "to correct manifest errors of law or fact or to present newly discovered evidence." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (quoting *Keene Corp. v. Int'l Fidelity Ins. Co.*, 561 F. Supp. 656 (N.D. Ill. 1982), *aff'd* 736 F.2d 388 (7th Cir. 1984)). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). Apart from manifest errors of law, "reconsideration is not for rehashing previously rejected arguments." *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). Whether to grant a motion for reconsideration "is left to the discretion of the district court." *Id.*

## ANALYSIS

Pease does not present newly discovered evidence. Rather, he argues that the decision granting defendants' summary judgment motion contains manifest errors of law and fact. First, Pease argues that the Court applied an incorrect legal standard for Title IX retaliation by requiring Pease to meet certain thresholds before a statutorily protected activity can be found. (Docket # 96 at 2–5.) Second, Pease argues the Court erroneously conflated the Title IX causation analysis with the constructive discharge causation analysis and failed to apply a "but-for" causation standard. (*Id.* at 5–7.) Third, Pease argues that the Court erroneously conflated Title IX retaliation with a hostile work environment constructive discharge. (*Id.* at 7–8.) And finally, Pease argues the Court misapplied the standard for threats of an adverse employment action and misapprehended the meaning of Pease's statements regarding constructive discharge. (*Id.* at 9–10.) I will address each argument in turn.

2

1. *Title IX Protected Activity*

In the decision granting summary judgment to the defendants, I stated that to prove retaliation under Title IX, Pease must produce enough evidence for a reasonable jury to conclude that: (1) he engaged in a statutorily protected activity; (2) the defendants took a materially adverse action against him; and (3) there existed a but-for causal connection between the two. (Docket # 90 at 8, citing *Burton v. Bd. of Regents of Univ. of Wisconsin Sys.*, 851 F.3d 690, 695 (7th Cir. 2017).) I further stated that a "retaliation claim requires statutorily protected activity, which generally involves subjective and objective factors." (*Id.* at 9, citing *Scheidler v. Indiana*, 914 F.3d 535, 542 (7th Cir. 2019).) Citing *Hamner v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 224 F.3d 701, 707 (7th Cir. 2000), I found that a plaintiff must not only have a subjective (sincere, good faith) belief that he opposed an unlawful practice; his belief must also be objectively reasonable, which means that the complaint must involve discrimination prohibited by the statute. (*Id.*)

Pease does not take issue with the Court's recitation of the controlling legal standard, in fact, Pease cites to the same caselaw cited in the summary judgment decision. (Docket # 96 at 2–5.) Rather, Pease argues that the Court required that he meet certain threshold requirements before a statutorily protected activity could be found. Specifically, Pease argues that the Court required an attempt to disband girls' gymnastics as a threshold for protected Title IX activity and required the District to violate Title IX before Title IX protected Pease. (*Id.* at 2–4.) This is inaccurate. Again, the law states that retaliation requires a statutorily protected activity, which generally involves subjective and objective factors. The two pieces of evidence cited by the Court that Pease now characterizes as erroneous "threshold requirements" contrary to the law were cited to show why the evidence does not support that

3

Pease had either a subjective belief that he was opposing an unlawful practice or that even if he did, that any such belief would be objectively reasonable. (Docket # 90 at 9–10.) The Court previously addressed the facts Pease argues support a finding of a Title IX protected activity. (Docket # 96 at 4–5; Docket # 105 at 3–4.) Recall that a "manifest error" is a wholesale disregard, misapplication, or failure to recognize controlling precedent. *Oto*, 224 F.3d at 606. While Pease argues why he disagrees with the Court's application of the law to the facts, he fails to show a "manifest error" warranting relief under Rule 59(e).

    2.    *"But-For" Causation Standard*

As stated above, to prove Title IX retaliation, a plaintiff must establish three elements—(1) engagement in a statutorily protected activity; (2) a materially adverse action; and (3) a "but-for" casual connection between the two. In the decision granting defendants' summary judgment, I found that Pease's Title IX retaliation claim failed because he failed to meet the first two elements of the claim. Because he failed to meet these first two elements, I declined to engage in a causation analysis. (Docket # 90 at 15); *see Burton*, 851 F.3d at 697 (finding because plaintiff failed to show employer's actions raised to level of a materially adverse employment action protected by Title IX, "like the district court, we need not engage in any causation analysis").

The crux of Pease's argument on reconsideration, however, is that the Court improperly determined "but-for" causation and erroneously conflated Title IX causation with constructive discharge. (Docket # 96 at 5–7; Docket # 105 at 4–6.) Pease is a step ahead of the Court's analysis. The decision does not conflate Title IX causation with constructive discharge. The decision does not analyze causation at all. Rather, the decision analyzed the first two elements necessary to obtain relief under Title IX retaliation, as failure to meet any

4

one of the three elements is fatal to the claim. After determining Pease failed to show the first element (that he engaged in a statutorily protected activity), I analyzed the second element. After finding Pease failed to meet the second element as well, I followed the court's lead in *Burton* and declined to address causation (the third element).

As to the second element, Pease's alleged adverse employment action was that his May 28, 2019 resignation amounted to constructive discharge. (Docket # 90 at 12.) To show constructive discharge as an adverse employment action, a plaintiff must show either that: (1) he resigned due to alleged discriminatory harassment that made the working environment unbearable or (2) that the employer acted in a manner such that an employee reasonably believed his termination was imminent. (*Id.* at 12–13, citing *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010); *E.E.O.C. v. Univ. of Chicago Hosps.*, 276 F.3d 326, 332 (7th Cir. 2002).) Under either form, a plaintiff must show that the work environment became intolerable. (*Id.*)

And although Pease disagrees with my conclusion, I considered the record evidence he now cites and determined that Pease failed to show that the District acted in such a manner that an employee would reasonably believe his termination was imminent. (Docket # 90 at 14.) Also required to show constructive discharge is that the work environment became intolerable. I determined that Pease failed to show this. (*Id.* at 14–15.) Again, while Pease disagrees with the conclusion, that is insufficient to show a manifest error of fact or law.

3. *Constructive Discharge/Hostile Work Environment*

In analyzing Pease's alleged adverse employment action of constructive discharge, I cited the court of appeals' decision in *Chapin* for the legal standard. *Chapin* says that constructive discharge constitutes an adverse employment action. 621 F.3d at 679.

Constructive discharge occurs "when the plaintiff shows that he was forced to resign because his working conditions, from the standpoint of the reasonable employee, had become unbearable." *Id.* The *Chapin* court continues by stating that this circuit "has recognized two different forms of constructive discharge, but neither dispenses with the requirement that the work environment had become intolerable." *Id.* The *Chapin* court explains that the "first form" is when "an employee resigns due to alleged discriminatory harassment," and explains that such cases "require a plaintiff to show working conditions even more egregious than that required for a hostile work environment claim." *Id.* It states the "second form" occurs when an employer acts in a manner so as to have communicated to a reasonable employee that he will be terminated; however, "a working condition does not become intolerable or unbearable merely because a 'prospect of discharge lurks in the background.'" *Id.*

Pease argues that the Court misreads *Chapin* as requiring a victim of Title IX retaliation to have personally suffered from sexual harassment. (Docket # 96 at 7.) Pease argues that the Court both failed to "conduct an analysis of the Plaintiff's hostile work environment constructive discharge claim" (Docket # 105 at 6) and erroneously conflated Title IX retaliation with a hostile work environment constructive discharge (Docket # 96 at 7). It is unclear, however, whether Pease argues that he can meet the legal standard under the first form of constructive discharge. And it is under this first form that Pease argues that I incorrectly required a finding that one personally suffer from sexual harassment to obtain relief. (Docket # 90 at 13.) But *Chapin* is clear that under the first form of constructive discharge, a plaintiff must show working conditions even more egregious than that required for a hostile work environment claim. 621 F.3d at 679. The court cites threats to one's personal safety as an example of this type of constructive discharge, such as a case where the

6

harassment included repeated use of noose and implied threats of physical violence. *Id.* (citing *Porter v. Erie Foods, Int'l, Inc.*, 576 F.3d 629, 640 (7th Cir. 2009)). Nothing in the record supports harassment rising to this level.

As to the second form, which Pease calls "unbearable working conditions constructive discharge," he argues that the Court improperly focused on Pease's response to Elworthy's investigation and on whether the District formally decided to terminate him when the focus should have been on whether the invitation to resign "communicated to a reasonable employee that he no longer had a job in all but name." (Docket # 96 at 7.) But again, I considered the evidence Pease now cites and found that he could not establish constructive discharge. Pease's disagreement with my conclusion does not amount to a manifest error of law or fact.

    4.    *Misapprehension of Facts*

Finally, Pease argues the court made "a manifest error of misapprehension" of the evidence. He then argues why the Court wrongly interpretated the record evidence. (Docket # 96 at 9–10.) He also argues that contrary to the Court's determination, there was "ample evidence" to support a finding of constructive discharge. (Docket # 105 at 6–8.) Again, I return to the standard for relief under Rule 59(e). This rule is meant to correct "manifest errors" of law or fact, which constitutes a wholesale disregard, misapplication, or failure to recognize controlling precedent. *Oto*, 224 F.3d at 606. Misapprehension is a mistaken belief or interpretation of something, while misapplication is the act of applying something incorrectly. While Pease may believe the Court misunderstood the facts, he has not shown anything more than a disagreement with the outcome. Reconsideration is not for rehashing previously rejected arguments, *Caisse Nationale de Credit Agricole*, 90 F.3d at 1270, which Pease

7

spends the bulk of his motion doing. Thus, Pease is not entitled to reconsideration on this ground.

## CONCLUSION

Reconsideration under Rule 59(e) serves the very limited purpose of correcting *manifest* errors of law or fact. Of course the party who was unsuccessful on summary judgment disagrees with the Court's findings and believes the Court should have held in his or her favor. But disagreement with the Court's analysis and outcome does not constitute a manifest error of law or fact. There must be a wholesale disregard, misapplication, or failure to recognize controlling precedent. Pease cannot meet that standard in this case. For these reasons, Pease's motion for reconsideration is denied.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the plaintiff's motion for reconsideration (Docket # 95) is **DENIED**.

Dated at Milwaukee, Wisconsin this 20th day of May, 2022.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge